Patrick J.H. **MARNANE**

v.

The **UNITED STATES.**

No. 671–81T.

United States Claims Court.

Aug. 22, 1984.

---

E.J. Eagleton, Tulsa, Okl., for plaintiff. Houston & Klein, Inc., Tulsa, Okl., of counsel.

Betty N. Ferber, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser and Donald H. Olson, Washington, D.C., of counsel.

## OPINION

### ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

*Statement of the Case*

This is a suit for refund of $14,780 in income taxes paid for 1977. The facts are not in dispute. The question presented is as to the proper method for computing taxable income received by an heir as compensation for services performed by his decedent over a period of years.

In 1947 plaintiff's grandfather, Arthur B. Honnold, a lawyer, entered into contracts to represent a number of Indian tribes in presenting their claims against the United States before the Indian Claims Commission. Under the contracts the amount of the attorneys' fees depended upon the amount of the recovery and upon award by the Indian Claims Commission. The contracts further provided that in the event of Mr. Honnold's death before final disposition of the Indian claims, his estate would be entitled to compensation for the services he rendered prior to his death.

In 1953, Mr. Honnold and his law partner assigned their interests in the handling of the claims to another law firm. The assignment provided that Mr. Honnold and his partner would receive a portion of any fees ultimately awarded. Under the agreement Mr. Honnold was to remain available "at his discretion" to act as a consultant on the Indian claims.

Mr. Honnold died in 1955. In 1972 the Indian Claims Commission adjudicated the claims favorably to the Indians, and in 1973 it awarded attorneys' fees totaling $1,010,-900. A dispute arose thereafter on the proper division of the fees, but in 1975 a settlement was reached among the attorneys and their successors, pursuant to which Mr. Honnold's estate was to be paid $471,484 for services rendered by the decedent between 1947 and 1955. As a result, plaintiff, heir of Mr. Honnold with a one-ninth interest in the estate, received $52,-384 in March 1977, representing his share of the attorneys' fees.

In plaintiff's income tax return for 1977 he reported total income of $79,192, which consisted of the $52,384 plus $26,808 of other income. As permitted by I.R.C.[1] §§ 1301–05, he limited his tax on the $79,-192 by averaging the income for the current year with that of the 4 preceding years and paid a total income tax of $28,-163.

However, in June 1978, under the authority of what he asserted to be a proper application of I.R.C. former sections §§ 1301–07, plaintiff filed an amended re-

_____

1. I.R.C. refers to the Internal Revenue Code of 1954 (26 U.S.C.) unless otherwise stated.

turn which computed the tax on the $52,384 in a different manner than the remainder of his income. He prorated the $52,384 fee annually over the 30-year period from June 1947 to April 1977; he determined the additional tax which would have been due for each of those years by adding the prorated amounts to his taxable income for those years at the rates then applicable to him; and he then claimed that the aggregate increases in tax for the prior years was the maximum tax which could be imposed on such fee for 1977. At the same time he continued to apply the current income averaging provisions to the remainder of his income. This resulted in a reduction of $13,383 from the tax liability he had reported on his original 1977 return, and he claimed a refund of $14,780.

After the Internal Revenue Service (I.R.S.) disallowed plaintiff's claim in February 1980, plaintiff timely filed this suit.

The current I.R.C. §§ 1301–05, which permit income averaging over 5 years, originated in the Revenue Act of 1964.[2] These sections supplant I.R.C. former §§ 1301–07. The former sections permitted limitation of the tax on compensation from an employment covering a period of 36 months or more, for which 80 percent or more of the total compensation was received or accrued in the taxable year, to not in excess of the aggregate of taxes attributable to such compensation had it been included in the gross income of the taxpayer ratably over that part of the period which preceded the date of such receipt or accrual. Notwithstanding the substitution of the new provisions, however, § 232(g) of the Revenue

Act of 1964 allows an individual receiving compensation after enactment of the Act but from an employment begun before February 6, 1963, to elect to compute the tax attributable to such compensation under the former sections.[3]

I.R.C. § 691, entitled "Recipients of Income in Respect of Decedents", provides at subsection (a) that if the right to receive an item of income, not properly includable in the last tax return of decedent, is acquired by reason of the death of the decedent, or by bequest, devise, or inheritance, it shall be included in the gross income for the taxable year when received, of the person who, by reason of the death of the decedent, acquires such right. Subsection 691(a)(3) headed "Character of Income Determined by Reference to Decedent", further provides that the right to receive such amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, "as if it had been acquired by the estate of such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income * * * shall be considered in the hands of the estate of such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount."

Plaintiff's amended return and claim for refund may thus be deemed an election to take advantage of the spread back provision of former sections 1301–07 with re-

**2.** Pub.L. 88–272, Title II, § 232(a), February 26, 1964, 78 Stat. 19, 105.

**3.** Section 232(g) of the 1964 Act provides:
(1) GENERAL RULE.—Except as provided in paragraph (2), the amendments made by this section [adding §§ 1301 to 1305, and omitting former §§ 1301 to 1307] shall apply with respect to taxable years beginning after December 31, 1963.
(2) INCOME FROM AN EMPLOYMENT.— If, in a taxable year beginning after December 31, 1963, an individual or partnership receives or accrues compensation from an employment (as defined by section 1301(b) of the Internal Revenue Code of 1954 as in effect

immediately before the enactment of this Act) and the employment began before February 6, 1963, the tax attributable to such compensation may, at the election of the taxpayer, be computed under the provisions of sections 1301 and 1307 of such Code as in effect immediately before the enactment of this Act. If a taxpayer so elects (at such time and in such manner as the Secretary of the Treasury or his delegate by regulations prescribes), he may not choose for such taxable year the benefits provided by part I of subchapter Q of chapter 1 of such Code (relating to income averaging) as amended by this Act * * *.

spect to the $52,384 fee received by plaintiff as compensation for the efforts of his deceased grandfather.

The I.R.S. does not challenge plaintiff's right to elect the spread back provisions of former §§ 1301–07, but does differ with plaintiff in the following respects:

1. Plaintiff claims that the limitation on his 1977 income attributable to the decedent's fee should be computed by spreading back such income over plaintiff's own returns, whereas the Service has taken the position that the limitation on plaintiff's income may only be computed by limiting the tax to that which results from attributing the income to the decedent's returns.

2. Plaintiff contends that for purposes of the limitation he is entitled to spread back decedent's compensation over a period beginning in 1947 (when the decedent first performed services to earn the fee) and ending in 1977 (when plaintiff received the fee), whereas the Service maintains that the income from the fee may only be reallocated to the period when the decedent performed the services, namely, from 1947 to the date of his death in 1955.

3. Plaintiff contends that he is entitled to the benefits of both former §§ 1301–07 and the current §§ 1301–05 in the same return, i.e., he is entitled to spread back the fee income derived from the decedent over the years 1944 through 1977, while at the same time averaging his income from other sources. The I.R.S.' position is however that while plaintiff has the option of electing either the old sections or the new, he is not entitled to elect both methods of tax limitation in the same tax return.

### Discussion

It is determined herein that defendant is correct on all three issues.

### I

■ With respect to the question of the returns to which the prorated amounts are to be added in calculating the aggregate limitations on plaintiff's 1977 tax, the answer is that the amounts must be added to the returns of the decedent.

Plaintiff's contention that the limitation must be computed from the plaintiff's own returns for 1947–77, rather than those of the decedent is based exclusively on the language of I.R.C. § 691(a)(3) and the regulations thereunder. That section provides that the right to receive an amount of income in respect of a decedent shall be treated in the hands of the recipient—

as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income * * * shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

Treasury Regulations on Income Tax § 1.691–3 also provides:

(3) If the amounts received would be subject to special treatment under part I (section 1301 and following), subchapter Q, chapter 1 of the Code, relating to income attributable to several taxable years, as in effect for taxable years beginning before January 1, 1964, if the decedent had lived and included such amounts in his gross income, such sections apply with respect to the recipient of the income.

Plaintiff argues that because the recipient of the income is entitled to treat the right to receive the amount as if he acquired it in the same transaction as the decedent, and because §§ 1301–05 would have applied to the decedent if he had lived, then the recipient of the income is entitled to spread back the income over his own returns as if he were the decedent.

The simplest and most direct refutation of this argument is that there is specific evidence that Congress intended to the contrary.

Section 691(a)(3) of the Internal Revenue Code of 1954, derives from § 126(a)(3) of the Internal Revenue Code of 1939, which was first enacted by the Revenue Act of

1942, ch. 619, 56 Stat. 798, § 134(e), at the same time the predecessor of former § 1301 was revised (Section 107(a) of the 1939 Code, added by Revenue Act of 1942, § 139(a)). The House Committee on Ways and Means report, which accompanied enactment of Section 126(a)(3), states (H.R. Rep. No. 2333, 77th Cong., 2d Sess. at 85–86 (*reprinted in* 1942–2 C.B. 372, 437)):

> Subsection (a)(3) of Section 125 [sic] * * is designed to place the person described in subsection (a)(1) in the same position with respect to the nature of his income as the position the decedent enjoyed. * * If the amounts [received] are compensation for personal services rendered over a period of 36 months, and would be within the provisions of section 107 [predecessor under the 1939 Code of former section 1301 and following] if the decedent lived and included such amounts on his gross income, section 107 applies. That is, *the tax of the person including this amount in gross income attributable to the inclusion of such amount in his income shall not exceed the aggregate of the taxes of the decedent which would be attributable to such amount if it had been received by the decedent in equal portions in each of the months included in the period in which the personal services were rendered.* [Emphasis added.]

The Senate report is substantially identical. (S.Rep. No. 1631, 77th Cong., 2d Sess. at 102–03 (*reprinted in* 1942–2 C.B. 504, 581).)

The same committee reports also make clear that what Congress had in mind when it prescribed in § 691(a)(3) that the recipient of the income should be placed in the same position as the decedent would have been with respect to the same transaction is only with respect to the nature of the income, such as treatment of the income as capital gain, ordinary income, earned income, interest from government obliga-

tions, and income earned over a 36-month period.

Also important is that the application which plaintiff urges would not be compatible with the purpose of the spread back provisions, which was stated by the Senate Finance Committee when they were first adopted (S.Rep. No. 648, 76th Cong., 1st Sess. at 7 (1939), *reprinted in* 1939–2 C.B. 524, 528–29):[4]

> It has been considered a hardship to tax fully the compensation of writers, inventors, and others who work for long periods of time without pay and then receive their full compensation upon the completion of their undertaking. Under existing law, such persons have their income for the whole period aggregated into the final year. This results in two inequities: First, only the deductions, expenses, and credits of the final year are chargeable against the compensation for the full period; second, under our graduated surtax, the taxpayer is subjected to a considerably greater burden because of the aggregation of his compensation.
>
> Section 220 of the bill provides that with respect to compensation for personal services rendered by an individual over a period of five or more years and which is paid only on the completion of such services the tax attributable to such compensation shall not be more than the aggregate of taxes which would have been paid had the income been received in equal portions in each of the years in the period. * * *

To allow the compensation to be spread back over the tax returns of an individual other than the one who performed the services could hardly serve the purpose of limiting the aggregate tax to that which would have been paid had the person rendering the services received the compensation during the years when it was earned.

The fact that the compensation was received by a beneficiary as an item of income with respect to a decedent should not

---

**4.** In Section 220(a) of the Revenue Act of 1939, c. 247, 53 Stat. 878, which added § 107 to the

I.R.C. of 1939.

cause a different result. If the rule were otherwise, an estate receiving such income would be entitled to spread it back even to periods when the estate was not in existence. Similarly, a beneficiary could determine his tax limitation by spreading back his income over taxable years before he was born, or when he was only a child and had no income at all.[5] While it's apparent that Congress intended to permit a beneficiary such as this plaintiff to limit his tax to the maximum tax to which the decedent would have been subject, to allow plaintiff to further reduce his tax by calculating it with reference to the plaintiff's own marginal rate in the years 1947 through 1955 would provide plaintiff with a windfall.

Defendant's position with respect to the proper interaction of the statutes on spread back of compensation for employment and income in respect of decedents is in accord with M. Ferguson, J. Freeland and R. Stephens, *Federal Income Taxation of Estates and Beneficiaries* (1970), at 122–23, which states as follows:

> [t]he former "spreadback" provisions of §§ 1301–1307, which were repealed for years after 1963, were keyed not to the average base period income of the recipient but to the income and deductions of the taxpayer entitled to the qualifying lump sum payment over the period during which it had been earned. Consequently, where such payments were taxable as income in respect of the decedent, either to the estate or to other recipients, the taxpayer was entitled to limit the tax to the aggregate impost the decedent would have incurred if the sum had been received ratably as it was earned during his life. [Footnotes omitted.]

And *see also* Harris, Jr., *Spreading Fees Forward and Back*, 18 N.Y.U. Institute on Federal Taxation 1231, 1254 (1960): "The measure of the limitation of tax is what the decedent would have paid during the spread-back years."

## II

■ It is equally clear that plaintiff is only entitled to prorate the compensation income over the period during which the decedent performed the services, namely 1947 through 1955, while he was still alive and performed the services for which the compensation was paid in 1977, and that plaintiff is not entitled to prorate such income over the years from 1956 through 1977. This is supported in several ways.

First, there is the language of the statute itself. Former § 1301 provides as follows:

> (a) *Limitation on Tax.*—If an individual or partnership—
>
> (1) engages in an employment as defined in subsection (b); and
>
> (2) *the employment covers a period of 36 months or more* (from the beginning to the completion of such employment); and
>
> (3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment,
>
> then the tax attributable to any part of the compensation which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably *over that part of the period which precedes the date of such receipt or accrual.* [Emphasis added.]

Under that section the ceiling for the tax is to be computed by including the compensation in the gross income of the employed individual ratably over that *part of the period* which precedes the date of receipt or accrual of the compensation. The only period referred to in the section is the period of 36 months or more from the beginning to the completion of the employment. Thus, even if the compensation is

---

5. From 1947 through 1955 the decedent was an active practicing lawyer, while plaintiff, who was relatively young, originally had adjusted gross income for the years 1947 through 1953 of zero, and for the years 1954 and 1955 of only $400 and $900, respectively.

not paid until 22 years later (as here), the period of employment for proration of the compensation income remains the same.

Second, as shown in the quotation at page 7, *supra*, the House Ways and Means Committee, in discussing the interaction of the predecessor of § 691 (Income In Respect of Decedents) with the predecessor of § 1301, stated that the tax of the person receiving the income should not exceed the aggregate of the taxes of the decedent which would be attributable to such amount if it had been received by the decedent "in each of the months included in the period in which the personal services were rendered." The committee obviously meant that the proration of the income should be computed only over the period of employment and not the extended time which frequently is required for an estate or heir to collect the debts owing a decedent.

Third, the Treasury Regulations on former §§ 1301–05, which date back to 1958,[6] are in accord with the foregoing construction of the statute. They provide:

§ 1.1301–2 Compensation from an employment.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(c) Allocation of income. The compensation from an employment is to be treated as if it had been received in equal portions in each of the calendar months (including those of the current taxable year) *which fall within the period of employment preceding the receipt or accrual of the compensation.* [Emphasis added.]

Plaintiff contends that the decedent was a member of a joint venture, which is treated as a partnership under the tax law, and that the decedent's period of employment must therefore be treated as continuing during the entire period in which the partnership earned the fee of which the decedent was entitled to a part. In support of this contention plaintiff cites that portion of former Treas.Reg. § 1.1301–2(e) which provides as follows:

(3) Individual engaged in an employment who becomes a member of a partnership which continues with such employment. If an individual begins an employment in an individual capacity and later becomes a member of a partnership which continues with such employment, the employment shall be considered, with respect to such individual, as one employment covering both the period during which a portion of the employment was performed by such individual in his capacity as such and the period during which a portion of the employment was performed by the partnership.

According to plaintiff this means that decedent's period of employment included the entire period of employment of the partnership whether or not the decedent performed any services during part of that period.

The difficulty with plaintiff's argument is, however, that it is contrary both to the statute and to other portions of the same regulation. Former I.R.C. § 1301 provided:

(c) *Rule With Respect to Partners.*—An individual who is a member of a partnership receiving or accruing compensation from an employment of the type described in subsection (a) shall be entitled to the benefits of that subsection only if the individual has been a member of the partnership continuously for a period of 36 months or the period of the employment immediately preceding the receipt or accrual. In such a case the tax attributable to the part of the compensation which is includible in the gross income of the individual shall not be greater than the aggregate of the taxes which would have been attributable to that part *had it been included in the gross income of the individual ratably over the period in which it was earned or the period during which the individual continuously was a member of the partnership, whichever period is the shorter.* For purposes of this subsection, a member of a partnership shall be deemed to have

6. T.D. 6294, May 30, 1958, 23 F.R. 3765.

been a member of the partnership for any period, ending immediately prior to becoming such a member, in which he was an employee of such partnership, if during the taxable year he received or accrued compensation attributable to employment by the partnership during such period. [Emphasis added.]

Since the decedent died in 1955, he was neither a member of the partnership thereafter nor could he have earned the income thereafter. The portion of the regulation upon which plaintiff relies deals with the situation covered by the last sentence of the statute, namely one where the individual whose compensation is involved served as an associate or employee of the partnership and subsequently became a partner, and not with a situation where he died or otherwise terminated his relations with the partnership and/or the earning of the income.

This is also reflected in other portions of the same regulations. Former regulations § 1.1301-2(e) provides with greater pertinency to the present issue:

(e) Rules with respect to partners—* * *
    (2) Limitation on tax.    * * *
    (iii) If an individual has been a member of a partnership continuously for a period of at least 36 months immediately preceding the receipt or accrual of compensation from an employment of the type described in section 1301(a), but such individual has not been a member of the partnership for the total period during which such compensation was earned by the partnership, the allocation of such individual's share of the compensation is limited to the period during which he was continuously a member of the partnership.

The same subsection (e)(2) also provides an example of the operation of the regulation which is inconsistent with plaintiff's contention:

Example (7). The ABC partnership began an employment on February 1, 1955. On July 31, 1957, after the employment had been in progress for 30 months, B retired from the partnership. The em-
ployment was completed on July 31, 1960, and coverd a period of 66 calendar months. The total compensation from the employment was $180,000 and was received on August 1, 1960. Pursuant to the terms of the partnership agreement, A and C each received $75,000, while B received $30,000 as his share. A and C are entitled to allocate their shares of the compensation over the full period of the employment, that is, over the 66 calendar months from February 1, 1955, through July 31, 1960. Since under the terms of the partnership agreement B retained an interest in the compensation from the employment when he retired from the partnership, *B will be treated as a partner and be entitled to allocate his $30,000 share over the 30 months of the period of employment preceding his retirement.* [Emphasis added.]

### III

■ Finally, plaintiff's contention that he is entitled to spread back the fee income derived from the decedent (pursuant to former §§ 1301–07) while at the same time averaging his income from other sources (pursuant to current §§ 1301–05) in the same income tax return is wholly without merit. Section 232(g)(2), set out more fully at footnote 3, *supra,* states that if a taxpayer elects to compute his tax under the provisions of former §§ 1301–07 of the Internal Revenue Code as in effect immediately before the enactment of the 1964 Act, "he may not choose for such taxable year the benefits provided by part I of subchapter Q of chapter 1 of such Code (relating to income averaging) as amended by this Act * * *."

The legislative committee reports also state with respect to this section (H.Rep. No. 749, 88th Cong., 1st Sess. at 110 (1964), U.S.Code Cong. & Admin.News 1964, pp. 1313, 1419 (*reprinted* in 1964-1 C.B.) (Part II) 123, 234:

Your committee concluded that it would be appropriate in the case of these long-term employments, which were already in being before your committee began

hearings on this matter, to permit the taxpayers involved to continue the form of averaging available under present law if they elect to forego the general 5-year averaging provided in this bill.

And *see also* S.Rep. No. 830, 88th Cong., 2d Sess. at 140 (1964) (*reprinted in* 1964–1 C.B.) (Part II) 502, 644.

The taxpayer does not explain how he can circumvent this express statutory prohibition.

In his reply brief, plaintiff suggests that both provisions may co-apply with respect to different items of income. However, nothing in the statute so qualifies the prohibition, and plaintiff's claim for the best of both worlds is obviously inconsistent with the requirement of an election.

### Conclusion

The pleadings, admissions and affidavits filed together with the motions show that there is no genuine issue as to any material facts and that the defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is allowed and plaintiff's cross-motion is denied. The clerk will enter judgment dismissing the complaint.